UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KALEED COLE,<br><br>       Plaintiff,<br><br>-against-<br><br>SUFFOLK RESTORATIVE THERAPY & NURSING, LLC dba MOMENTUM AT SOUTH BAY FOR REHABILITATION AND NURSING, PARAGON MANAGEMENT SNF, LLC, ARJUNE BHAIROO, JOSEPH APLUSTILLE, AND JAYNE M. EURELL,<br><br>       Defendants. | Civil Action No.:<br><br>**COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff, Kaleed Cole ("Plaintiff"), by and through his attorneys, Valiant Law, hereby complains about Defendants Suffolk Restorative Therapy & Nursing, LLC, dba Momentum at South Bay for Rehabilitation and Nursing ("Momentum"), Paragon Management SNF, LLC ("Paragon") (entity Defendants together, the "Company"), Arjune Bhairoo ("Bhairoo"), Joseph Aplustille ("Aplustille"), and Jayne M. Eurell ("Eurell"), (all Defendants collectively referred to as the "Defendants") and alleges, as follows:

## PRELIMINARY STATEMENT

**Evaluate yourself in the following categories. Please provide a numeric number next to each of the "seven deadly sins of speaking". When you add up each category, it must come to 10. In other words, if you rate your propensity to complain at a 10, the other categories will be 0.**

**Gossip; Judging; Negativity; Complaining; Excuses; Lying; Dogmatism.**

1. Defendants required their employees, including Plaintiff, to complete the above exercise as part of annual self-evaluations. This mandatory and bizarre exercise demonstrates Defendants' efforts to chill employees from making complaints, even those protected by law.

1

2. Unfortunately for Plaintiff, his years of employment with Defendants came to an abrupt end only *days* after he made reasonable complaints to supervisors about bullying, harassment and other unlawful circumstances.

3. Indeed, before making protected complaints, Plaintiff was a star employee, even being recognized on Momentum's Facebook page participating in the "Ace Wrap Challenge!"[1]

4. But as soon as Plaintiff complained, Defendants swiftly retaliated by threatening him, conducting a sham investigation, and subjecting Plaintiff to other inferior terms and conditions of his employment.

5. Worse, Plaintiff requested an accommodation to take time off to receive and recover from back surgery, a necessary medical procedure to cure a non-workplace injury. Initially, Plaintiff's supervisor approved this request.

6. Yet, the very moment the supervisor learned that Plaintiff had committed the "sin of complaining," he immediately backtracked on this approved accommodation, and instead terminated Plaintiff's employment later that very day.

7. As a result, Plaintiff was kicked to the curb, had his health insurance cancelled, and was forced to indefinitely postpone this necessary medical procedure.

8. Defendants' conduct not only exceeded basic morals and decency but also violated the law. As such, Plaintiff complains pursuant to the New York State Human Rights Law, NYS Executive Law §§ 296 *et seq.* ("NYSHRL"), the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA"), and New York Labor Law ("NYLL"), amongst other laws as set forth below.

---

[1] https://www.facebook.com/watch/?v=433697734378789

**JURISDICTION & VENUE**

9. The Court has jurisdiction over the subject matter of the action pursuant to 28 U.S.C. § 1331 for Plaintiff's claims arising under the laws of the United States, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for Plaintiff's claims arising under state and local laws.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as one or more Defendants reside within this District and all Defendants are residents of this State.

11. Any and all other prerequisites to the filing of this suit have been met.

**PARTIES**

12. Plaintiff is an individual who, at all relevant times, resides in Suffolk County, New York. Plaintiff required surgery to address complications stemming from a automobile accident unrelated to his employment which in whole or in part, constitutes a physical, mental, or medical impairment which prevents the exercise of a normal bodily function. As such, Plaintiff is an individual with a disability within the meaning of federal, state, and local law.

13. Upon information and belief, Defendant Momentum at South Bay is a domestic Limited Liability Company, duly authorized to conduct business in accordance with the laws of the State of New York, with an address of 340 East Montauk Highway, East Islip, NY 11730. Upon information and belief, Momentum is a wholly owned subsidiary of Paragon.

14. Upon information and belief, Defendant Paragon Management SNF, LLC is a domestic Limited Liability Company duly authorized to conduct business in accordance with the laws of the State of New York, with an address of 55 Pilgrim Lane, Monsey, NY 10952.

15. Upon information and belief, Arjune Bhairoo is an individual who, at all relevant times, was a resident of the State of New York. Bhairoo is the Director of Nursing at Momentum and had supervisory authority over Plaintiff.

16. Upon information and belief, Bhairoo has authority to hire and fire employees, supervised and controlled employee schedules and conditions of employment, determined the rate and method of payment for relevant employees and/or employee salary bands or categories, including Plaintiff's, and maintained and/or managed employee records

17. Upon information and belief, Joseph Aplustille ("Aplustille") is an individual who, at all relevant times, was a resident of the State of New York. Aplustille is the Director of Rehabilitation at Momentum and had authority over Plaintiff.

18. Upon information and belief, Aplustille has authority to hire and fire employees, assign work responsibilities, complete performance reviews, make administrative decisions, bring disciplinary action, and set policies, among other things.

19. Upon information and belief, Jayne M. Eurell is an individual who, at all relevant times, was a resident of the State of New York. Eurell is the Director of Risk Management at Paragon.

20. Upon information and belief, Eurell has authority to hire and fire employees, assign work responsibilities, complete performance reviews, make administrative decisions, bring disciplinary action, and set policies, among other things.

21. Upon information and belief, Defendants were an "employer" and/or "covered employer" as defined by all relevant statutes protecting human rights in the State of New York, including but not limited to the FMLA, NYSHRL and the NYLL.

22. At all relevant times, Plaintiff was an "employee" and/or "covered employee" of Defendants under all relevant statutes protecting human rights in the State of New York, including but not limited to the FMLA, NYSHRL and the NYLL.

23. At all relevant times, Momentum and Paragon are members, subsidiaries, joint venture partners, partners and/or agents of one another. The Defendant entities are owned, operated, and controlled by the same owner, or owner group, operating as a unified operation and, upon information and belief, each provides mutually supportive services to the substantial advantage of the other, such that each entity may be treated as agents of each other, independent contractors, subcontractors, a single enterprise and/or joint employers.

24. Defendants were in charge of, and had control over, Defendants' policies and procedures with respect to its unlawful policies, acts and practices alleged herein, including but not limited to, payroll, timekeeping, scheduling, engaging in the interactive process, providing employees with reasonable accommodations, discussing and approving medical leave requests, and otherwise running the business. The Defendants share a common commercial business purpose.

25. Although Defendants may be separate and distinct business entities and individuals, they engage in related activities. Defendants shared Plaintiff, as well as other employees, acted in the interest of each other with respect to employees, paid their employees by the same method, shared control over their employees, hired and fired employees, administered disciplinary procedures, used the same Human Resources employees, supervised employee, maintained payroll provided insurance, controlled the terms and conditions of employees' employment, employed the individuals who committed the unlawful acts alleged herein, and are themselves under common control and management.

26. Plaintiff further alleges, upon information and belief, the Defendant entities, at all relevant times, were the alter egos of each other and there exists, and at all relevant times has existed, a unity of ownership between the Defendants such that any separateness has ceased to

exist in that the entities, owners, members used and continued to use, comingle, or restrict the assets for their own use, without adequate consideration and have withdrawn funds from these entities for its parent organizations and use and/or collusion, and at all times herein mentioned were, controlled, dominated, and operated by Defendant entities, in that the activities and business of Defendants were and are carried out without the holding of proper directors or shareholders meetings, comingled funds and accounts, improper insurance, no records or minutes of any material corporate proceedings were maintained.

## STATEMENT OF FACTS

### *Plaintiff was Hired and Establish a Strong Record Over Years of Employment*

27. Plaintiff was hired by Defendants on or around May 2019, as a Wound Care Registered Nurse.

28. In this role, Plaintiff's duties included working with physicians and other staff to provide care for patients who had open wounds.

29. Throughout his employment, Plaintiff dedicated himself to his work and provided quality care to all residents at Momentum.

30. At all times, Plaintiff performed his work satisfactorily and was more than qualified for the position he held evidenced by several salary increases.

31. Unfortunately, Plaintiff's upward career trajectory came to a screeching halt once Plaintiff complained to Defendants about conduct he reasonably believed to be illegal.

### *Plaintiff Objected to Being Singled Out with Additional and Nonsensical Duties*

32. On or around Friday, December 1, 2023, Plaintiff was called into a meeting with Director of Nursing, Bhairoo.

33. Bhairoo handed Plaintiff a piece of paper titled, "Wound care coordinator primary responsibility [sic] on weekly/monthly base [sic]" (hereinafter, the "Responsibilities List") which listed 22 bullet points of supposed job responsibilities.

34. The Responsibilities List appeared to be haphazardly thrown together as some sentences did not end with a period, others began without capitalized letters, and generally, the document was ripe with typographical and grammatical errors which led Plaintiff to question its authenticity and legitimacy.

35. Additionally, Plaintiff noticed he was the only one from the staff to receive the Responsibilities List. Indeed, Plaintiff felt he was being singled out, bullied, and set up for failure as some of the additional "responsibilities" were incomprehensible and/or impossible.

36. Accordingly, Plaintiff felt that something was not right and did not feel comfortable signing the Responsibilities List. Bhairoo told Plaintiff he could think about it over the weekend, but that he had to sign the document that following Monday.

37. As a result, Plaintiff proceeded to file a formal complaint with the Company on or around December 4, 2023, by sending an email to the corporate compliance officer, Eurell, and requesting a meeting. Plaintiff requested the meeting with Eurell based on his reasonable belief that the Company was violating laws and ethical standards to which it was bound by forcing him to sign the Responsibilities List procured by Bhairoo.

38. Plaintiff sent a copy of the Responsibilities List he received to the Eurell by email in advance of their meeting.

39. On or around December 4, 2023, Eurell told Plaintiff that he did not have to sign the Responsibilities List if he did not feel comfortable signing it.

40. In fact, she even stated, in sum and substance, *"If I were you, I wouldn't sign that, especially because of the last paragraph – it looks that there are things that haven't been decided yet."*

41. Later that same day, Plaintiff met with Bhairoo and Assistant Director Nurse, "Angela."

42. During this meeting, Defendants told Plaintiff that everyone would be receiving this type of document.

43. Plaintiff provided feedback and addressed specific job duty responsibilities that were written on the Responsibilities List that he felt were going to stunt his job performance and potentially jeopardize patient care. He also wanted to discuss the contents of the Responsibilities List so he could have a better understanding of what it meant for his job duties and expectations.

44. Instead of responding to Plaintiff's concerns, Bhairoo declared, "***I think it is disrespectful that you went to talk to my boss*** [Eurell] ***about this. It won't go unnoticed.***" Plaintiff felt confused by Defendants' outright threats in response to his protected complaints.

45. Other employees who had not raised issues with Defendants' practices were not spoken to in such an intimidating matter, which subjected Plaintiff to inferior terms and conditions of his employment.

46. Instead of addressing Plaintiff's legitimate concerns, Defendants stonewalled and threatened him. As such, Plaintiff was left with no other choice but to refuse to sign the Responsibilities List at the direction of Eurell, and based on his good faith reasonable beliefs the Responsibilities List was violative of policies, rules, and regulations to which Defendants were bound.

47.     After stating to Defendants that he would not sign the document, Plaintiff excused himself and went back to work.

48.     Upon information and belief, others employees were not burdened with the additional, nonsensical tasks on the Responsibilities List.  As such, Defendants were attempting to subject Plaintiff to inferior terms and conditions of employment by forcing him to sign the Responsibilities List.  When Plaintiff refused to acquiesce to these unreasonable demands, Defendants retaliated.

***In Retaliation, Defendants Made an Adverse Finding About Plaintiff's Protected Complaints***

49.     On or around December 13, 2023, Plaintiff had a phone call with Eurell.

50.     During this call, Eurell told Plaintiff that Defendants had made an investigation into his complaints and concluded that there was no bullying or harassment being directed at him.

51.     This was the first time Plaintiff was made aware that an investigation had been initiated, evidencing that they failed to take Plaintiff's complaints seriously.

52.     Had Defendants conducted a legitimate, good faith inquiry, their investigator would have contacted Plaintiff for his side of the story about purported bullying he experienced and issues with the Responsibilities List.

53.     Instead, as was Defendants' custom and practice, complaints were outright discouraged and having an open dialogue about conduct of employees reasonably believed to be a violation of the law, rule, or regulation was met with retribution.

54.     By way of example, Defendants forced Plaintiff to complete a self-evaluation by ranking their culpability for each of the "seven deadly sins of speaking": (1) Gossip; (2) Judging; (3) Negativity; (4) **Complaining**; (5) Excuses; (6) Lying; and (7) Dogmatism.  Plaintiff was forced to distribute 10 points over these four categories.

55. In no uncertain terms, Defendants used their "seven deadly sins of speaking" to equate engaging in protected activity, like complaining, to be on par with other, "sinful" traits.

56. Indeed, Plaintiff realized the adverse effects he was experiencing were the result of his complaints to Defendants.

### *Plaintiff Notified Defendants of His Planned Surgery*

57. That same day, December 13, 2024, Plaintiff initiated a meeting with Aplustille to notify him well in advance of his upcoming surgery and request time off for recovery.

58. Plaintiff was involved in an automobile accident in late 2021 unrelated to his employment with Defendants. After years of physical therapy, Plaintiff was finally well enough to undergo back surgery as part of his recovery.

59. Defendants were aware of Plaintiff's condition as he had notified them once he became injured in 2021.

60. As such, Plaintiff told Aplustille that he had surgery planned for the end of January 2024 and would require time off for the procedure and to recover.

61. Aplustille stated there would be "no problem" and Plaintiff would be allowed the time off to treat for his injuries and to recover.

### *Defendants Completed their Discriminatory and Retaliatory Scheme That Very Afternoon*

62. On December 13, 2023, Aplustille paged Plaintiff asking him to come to his office.

63. Plaintiff thought this meeting with Aplustille would discuss a Christmas bonus given the time of year and Plaintiff, and other employees, were summonsed in the past via pager to receive bonuses.

64. Instead, Aplustille began by stating that he did not know Defendants conducted an investigation into Plaintiff's complaints about Bhairoo and the Responsibilities List – further

10

evidencing the surface level inquiry which Defendants conducted, if they even conducted an investigation at all, into Plaintiff's legitimate concerns.

65. In further retaliation, Aplustille stated, "*I wish you came to me first*," rather than to Eurell to discuss Plaintiff's concerns, even though as corporate compliance office, Eurell had the authority to field complaints of non-compliance.

66. Suddenly, Aplustille claimed that since Plaintiff was "*not happy here*" and that they "*need to part ways*."

67. Indeed, Defendants terminated Plaintiff's employment at once.

68. Plaintiff was blindsided, especially given that he and Aplustille had met prior to discuss Plaintiff's surgery and Defendants did not intimate there were any issues with Plaintiff – performance of otherwise.

69. In fact, when Eurell called Plaintiff that morning to inform him of Defendants' "investigation," she did not say there were any adverse findings with respect to Plaintiff's performance.

70. It was no coincidence that Plaintiff's employment was terminated only after he disclosed his need for a medical leave of absence due to the January 2024 surgery.

71. Rather, Defendants branded Plaintiff with the Scarlet Letter "**Complainer**" and then did not want to have to have to deal with the "**Complainer**" requiring reasonable accommodations due to his disability and/or perceived disability.

72. Upon information and belief, Defendants failed to offer Plaintiff COBRA enrollment options driven by their discriminatory animus and unlawful desire to minimize their health insurance premiums at all costs.

73. Instead, Defendants terminated Plaintiff's employment hoping to silence the "**Complainer**" and save themselves from having to provide reasonable accommodations and pick up the bill on his medical expenses through insurance premiums.

74. Simply put, it is clear Defendants terminated Plaintiff's employment in retaliation, not due to any performance issues as he always performed his duties well.

75. To add insult to injury, without notice, upon information and belief, Defendants cut off Plaintiff's insurance coverage December 14, 2023, the day following his termination. When Plaintiff went to the pre-operative appointment for his surgery, he was told that he did not have insurance. As a result, Plaintiff was forced to postpone his surgery.

76. In the end, and while these are just some of the examples of discrimination, harassment and retaliation Plaintiff endured, Defendants' actions were intended to, and did, create a hostile work environment, replete with discrimination, retaliation, and disparate treatment that no reasonable person should or would tolerate.

77. Upon information and belief, Plaintiff was subject to disparate treatment by Defendants, based on his disability and/or perceived disability. Defendants treated Plaintiff less favorably than similarly situated employees outside his protected group.

78. As a result of Defendants' unlawful conduct, Plaintiff suffered and continues to suffer economic loss or disadvantage both as earnings and benefits, and emotional distress, including (without limitation), depression, decline in health, anxiety, embarrassment, humiliation, loss of self-esteem, and mental anguish.

79. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages.

**AS A FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS**
**<u>DISCRIMINATION UNDER THE NYSHRL</u>**

80.  Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

81.  New York State Executive Law § 296 provides: "It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, citizenship or immigration status, sexual orientation, gender identity or expression, military status, sex, *disability*, predisposing genetic characteristics, familial status, marital status or status as a victim of domestic violence, of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." (Emphasis added).

82.  Further, New York State Executive Law § 296 prohibits an employer from denying reasonable accommodations, including refusing to properly authorize a leave of absence resulting from fear and anxiety caused by an unsafe workplace.

83.  Defendants violated the section cited herein by creating and maintaining discriminatory working conditions, a hostile work environment, failing to engage in the interactive process, failing to accommodate, and otherwise discriminating against Plaintiff and subjecting him to disparate treatment because of his disability, and/or perceived disability.

**AS A SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS**
**<u>RETALIATION UNDER THE NYSHRL</u>**

84.  Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

85. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because she has opposed any practices forbidden under this article."

86. By complaining to Defendants of discrimination and retaliation, Plaintiff engaged in protected activities.

87. In response to Plaintiff's complaints, Defendants subjected Plaintiff to numerous adverse employment actions, including, but not limited to refusal to provide documents concerning termination status, refusal to engage in the interactive process, and ultimate termination of his employment.

88. Accordingly, Defendants engaged in unlawful retaliatory practices by retaliating against Plaintiff because of his opposition to unlawful employment practices.

## AS A THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS
## AIDING AND ABETTING DISCRIMINATION UNDER THE NYSHRL

89. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

90. New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

91. New York State Executive Law § 292(a) defines "person" to include "one or more individuals, partnerships, associations, *corporations*, legal representatives, trustees, trustees in bankruptcy, or receivers." (Emphasis added).

14

92. Defendants participated in, condoned, encouraged, and approved the conduct giving rise to the unlawful conduct alleged herein, including but not limited to, discrimination and retaliation.

93. Defendants violated the section cited herein as set forth.

### AS A FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
### WHISTLEBLOWER RETALIATION IN VIOLATION OF NYLL § 740

94. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

95. New York Labor Law § 740 prohibits an employer from taking any retaliatory action against an employee, because such employee discloses or threatens to disclose to a supervisor a practice of the employer that the employee reasonably believes is in violation of law, rule or regulation. NYLL § 740(2)(a).

96. At all relevant times, Defendants were an "employer" and Plaintiff was an "employee" under the NYLL.

97. Plaintiff reasonably believed Defendants' actions, policies, and/or practices were violations of the law, rule and/or regulations.

98. Plaintiff complained about and/or disclosed such actions to his supervisors, Defendants, Defendants' employees, and Defendants' HR department, among others.

99. Defendants violated the section cited herein by retaliating against Plaintiff for his protected activities and complaints of Defendants' conduct, which Plaintiff reasonably believed violated New York State laws, Federal laws, rules, and regulations.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
## RETALIATION IN VIOLATION OF NEW YORK LABOR LAW § 741

100. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

101. New York State Labor Law §741 provides, in relevant part:

> No employer shall take retaliatory action against any employee, because the employee does any of the following:
>
> (a) discloses, or threatens to disclose to a supervisor or to a public body, to a news media outlet, or to a social media forum available to the public at large, an activity, policy or practice of the employer that the employee, in good faith, reasonably believes constitutes improper quality of patient care or improper quality of workplace safety;…

102. As set forth in detail herein and above, Plaintiff engaged in activities protected under this statute, such as clearly communicating improper patient care and risk to safety posed by the Responsibilities List.

103. As such, Plaintiff engaged in protected activities and brought her complaints to a supervisor who was appropriately designated to handle such complaints. Plaintiff had a reasonable and good faith belief that these issues constituted improper quality of patient care, were unlawful, violative of Defendants' rule and regulations, and posed an imminent threat to the safety and health of consumers, in addition to Defendants' staff.

104. As a direct result of his complaints, Plaintiff was subjected to adverse employment actions as alleged herein, and ultimately, terminated, in retaliation for his protected activities and in violation of New York State Labor Law §741.

105. Defendants violated the section cited herein by retaliating against the Plaintiff for his complaints of Defendants' conduct which Plaintiff reasonably believed violated New York State Laws, Federal Laws, and regulations.

## AS A SIXTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
### FMLA INTERFERENCE

106. Plaintiff repeats, reiterates and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

107. By the actions described above, Defendants unlawfully interfered with Plaintiff's FMLA rights. Plaintiff gave proper notice of his intent to utilize, and was entitled to utilize, FMLA protections, and Defendants thwarted, denied, and prevented Plaintiff obtaining benefits.

108. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer monetary and/or economic harm for which he is entitled to an award of damages, in addition to reasonable attorneys' fees and costs.

109. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

110. Defendants' unlawful actions constitute reckless, intentional, malicious, willful and wanton violations of the FMLA.

## AS A SEVENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
### FMLA RETALIATION

111. Plaintiff repeats, reiterates and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

112. By the actions described above, Defendants retaliated against Plaintiff for exercising and/or attempting to exercise his FMLA rights. Plaintiff engaged in a protected activity

by requesting FMLA and attempting to exercise same, and Defendants took materially adverse employment action against Plaintiff in retaliation.

113. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which he is entitled to an award of monetary damages, liquidated damages, reasonable attorneys' fees and expenses, and other relief.

114. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

115. Defendants' unlawful actions constitute reckless, intentional, malicious, willful, and wanton violations of the FMLA.

## JURY DEMAND

116. Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests a judgment against Defendants as follows:

A. Declaring that the Defendants engaged in unlawful employment practices prohibited by FMLA, NYSHRL, NYLL and common law in that the Defendants injured, harassed, discriminated, and retaliated against Plaintiff;

B. An injunction and order permanently restraining Defendants and their partners, officers, owners, agents, successors, employees and/or representatives, and any and all persons

acting in concert with them, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

  C. Awarding damages to the Plaintiff for any lost wages and benefits, past and future, back pay and front pay, and interest, resulting from Defendants' unlawful employment practices, against Defendants, or any jointly or severally liable entity or person;

  D. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation against Defendants, or any jointly or severally liable entity or person;

  E. Awarding Plaintiff civil penalties and liquidated damages pursuant to New York Labor Law.

  F. Awarding Plaintiff all damages sustained as a direct and proximate result of Defendants' breaches of any agreements and/or otherwise unlawful conduct alleged herein;

  G. Awarding Plaintiff Punitive Damages;

  H. Awarding Plaintiff all interest, attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

  I. Awarding Plaintiff such other and further relief as the Court may deem equitable. just and proper.

Dated: February 5, 2025
       White Plains, New York

                                              Yours, etc.

                                              VALIANT LAW

                                              By: *s/ Joseph Jeziorkowski*
                                                     Joseph Jeziorkowski, Esq.
                                                     William Knight, Esq.
                                            *Attorneys for Plaintiff*
                                            *Kaleed Cole*
                                            2 Westchester Park Dr., Suite 205
                                            White Plains, New York 10604
                                            914-730-2422
                                            jjj@valiantlaw.com
                                            wfk@valiantlaw.com